# MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 25.   Argued October 28, 29, 1914.—Decided November 9, 1914.

Whether the concession of lands in Indian Territory under § 9 of the Land Grant Act of July 25, 1866, c. 241, 19 Stat. 236, was a grant *in præsenti* or a covenant to convey, it was dependent upon fulfilment of the express conditions precedent that the Indian title be extinguished and when extinguished become public lands of the United States; and those conditions have not been fulfilled.

A statute granting public lands or Indian lands which may become public lands, will not be construed as including Indian lands afterwards allotted in severalty under a treaty made immediately before the enactment of the statute, as to do so would be to accuse the Government of bad faith with the Indian owners of the land.

Grants from the Government are to be strictly construed against the grantee.

47 Ct. Cls. 59, affirmed.

THE facts, which involve the construction of § 9 of the Land Grant Act of July 28, 1866, and the provisions therein contained for grants of lands in Indian Territory on the extinguishment of the Indian title, are stated in the opinion.

*Mr. H. S. Priest* and *Mr. Joseph M. Bryson,* with whom *Mr. A. B. Browne, Mr. C. L. Jackson, Mr. W. W. Brown* and *Mr. Alexander Britton* were on the brief, for appellant.

*The Solicitor General* and *Mr. Assistant Attorney General Thompson* for the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

This claim, as construed by the claimant and appellant is based upon covenants supposed to be imported by an act of Congress of July 25, 1866, c. 241, § 9. 14 Stat. 236. Upon demurrer it was dismissed by the Court of Claims. 47 C. Cl. 59. The largeness of the demand tends to induce a correspondingly voluminous statement, but the issue really is narrow and the material facts are few.

The United States had made land grants to the great roads running east and west but had not provided for a connection between those roads and the Gulf, through Kansas and the Indian Territory to the south. To that end, the act of July 25, 1866, after granting to Kansas, for the use of a road to be built through eastern Kansas from the eastern terminus of the Union Pacific between Kansas and Missouri, ten alternate sections per mile on each side of the road, § 1, authorized the company mentioned to extend its road from the southern boundary of Kansas south, through the Indian Territory to Red River, at or near Preston, in Texas, so as to connect with a road then being constructed from Galveston to that point. Section 8. The appellant also had been authorized by charter to build a road running southerly from a point on the Union Pacific to where the southern boundary of Kansas crosses the Neosho River, and had acquired a land grant; and the act of July 25, 1866, went on to provide that if the appellant, under its former name of Union

Pacific Railway, Southern Branch, first completed its road to the point of crossing the southern boundary of Kansas, it should be authorized to construct its line to the point near Preston, "with grants of land according to the provisions of this act." The right of way was granted in accordance with treaties with the Indians and is not in question here.

The appellant finished its road first, built the southern extension and acquired the rights to land under the act of 1866, and the question is what rights it has, in the event that has happened, under § 9. That section enacted "That the same grants of lands through said Indian Territory are hereby made as provided in the first section of this act, whenever the Indian title shall be extinguished by treaty or otherwise, not to exceed the ratio per mile granted in the first section of this act; *Provided,* That said lands become a part of the public lands of the United States." This part of the Indian Territory was occupied by the five civilized tribes, and what has happened is that under acts of Congress the land concerned has been distributed in severalty to the members of those tribes or sold for their benefit.

Taken literally the grant or covenant of the United States was subject to two conditions precedent. 'Whenever the Indian title shall be extinguished' means when and not until that occurs, and contemplates it as something that may or may not come to pass. The proviso attaches the further condition that if the Indian title shall be extinguished it must be extinguished in such a way that the lands become a part of the public domain. It cannot be said that 'whenever' imports that sooner or later the Indian title will and shall be disposed of. The Indians had to be considered and it could not be assumed that they would be removed to another place, as they had been removed before. It cannot be said, either, that on the face of the clause the proviso adds nothing and means

only that on extinction of the Indian title the rights of
the railroad shall attach as if the land were public land.
The section taken by itself and on its face excludes the
claimant's interpretation that the United States made
an absolute promise or grant, and it excludes it none the
less that certain services were to be rendered by the road
to the United States as one of the terms of the grant
of a right of way which the railroad got.—On this literal
reading of the statute the conditions have not been ful-
filled. The land has remained continuously appropriated
to the use. of the Indians or has been sold for their benefit.
It never for a moment has become a part of the public
domain in the ordinary sense. *Newhall* v. *Sanger*, 92
U. S. 761, 763. *Union Pacific R. R. Co.* v. *Harris*, 215
U. S. 386, 388. It is argued that the grant attached the
moment that the tribal title ceased, whatever it was. But,
still looking only at the face of the act and seeing the in-
tent to respect the Indian rights, we cannot read it as
preventing the United States from making the change
from tribal to several possession or dealing with ·this
land in any way deemed most beneficial for those whose
rights were treated as paramount. The proviso that the
land must become public land shows that a mere change
from tribal title was not enough. Taken literally the
grant only applied in case the Indians were removed or
bought off the land.

The facts existing at the time confirm the literal in-
terpretation of the act. Less than a week before the pas-
sage of the statute the United States had made a treaty
with the Cherokees that contemplated the possible allot-
ment of their share in this land to be held in severalty.
Treaty of July 19, 1866, Art. 16, 14 Stat. 799, 804. On
June 14, 1866, it had agreed with the Creeks that their
lands should be forever set apart as a home for the Nation.
14 Stat. 785. And by a treaty of April 28, 1866, Art. 11,
it had agreed with the Choctaws and Chickasaws that

they might have their lands surveyed and divided up, reciting that it was believed that the holding of the land in severalty would promote the general civilization of said Nation. 14 Stat. 769, 774. Whether or not, as the Government contends, the title of these tribes to the land in controversy was higher than the original possessory right, the United States, as the appellant must be taken to have known, just before its covenant with the railroad, had been holding out to the Indians the desirableness and possibility of dividing up their lands into individual holdings; and it would be to accuse the Government of bad faith to one party or the other to suggest that it forthwith agreed with the appellant that the moment such a division and allotment took place the appellant thereby should acquire a paramount title and render the allotment vain. See further *Kansas* v. *United States*, 204 U. S. 331, 341, 342.

The action of Congress in making the allotment to individuals shows in express terms that it did not suppose that the railroads would, or intend that they should, acquire any new rights. Act of March 1, 1901, c. 676, § 23; 31 Stat. 861, 867. July 1, 1902, c. 1362; 32 Stat. 641. July 1, 1902, c. 1375; 32 Stat. 716. April 26, 1906, c. 1876, § 27; 34 Stat. 137, 148. Our conclusion from the words of the statute and the circumstances seems to us too plain to require a reference to the rule of strict construction against the grantee of the Government in case of doubt, and seems to us unaffected by the argument that a grant *in præsenti* was made by § 9. It appears to us that the appellant's claim stands most strongly if based upon a covenant—but, covenant or grant, the concession of the United States was dependent upon conditions that have not been fulfilled.

*Judgment affirmed.*