UNITED STATES v. STATE BANK OF WINFIELD, KAN., et al.

No. 509.

District Court, E. D. Oklahoma.

Oct. 23, 1944.

Cleon A. Summers, U. S. Atty., and William H. Landram and Francis Stewart, Asst. U. S. Attys., all of Muskogee, Okl., for the United States.

W. Joe Hulsey and H. I. Aston, both of McAlester, Okl., for defendants.

WILLIAMS, Circuit Judge.

This is an action by the United States of America for the Choctaw and Chickasaw Nations against the City of McAlester, a municipal corporation, James Troy McAlester, J. J. McAlester Mercantile Company, a corporation, Otto Sites, A. F. & A. M. Lodge No. 9 of McAlester, Oklahoma, and other defendants, for the possession of property which prior to October 25, 1904, was a part of the east side of the right-of-way and station grounds of the Missouri, Kansas & Texas Railway Company, a Kansas corporation, at McAlester, Choctaw Nation, under approval by the Secretary of the Interior Department of the United States on January 19, 1880, of a grant for right-of-way and station grounds to the said Railway Company, a certified copy of which was introduced in evidence on the hearing of this case (Exhibit A). Said part of the said right-of-way and station grounds on October 25, 1904, was quitclaimed by said railway company to defendants and others and platted into blocks 118A and 85A containing lots (1 to 25, inclusive) by the City of McAlester and by it quitclaimed to the several defendants, as disclosed by the evidence introduced on the trial, except the north 25 feet of lot

9 in block 85A upon which part of said tract or lot the City of McAlester retained and thereon caused to be constructed and maintained and has now located thereon a fire station.

Among the questions involved is whether the said lands granted to the said railway company under Act of Congress of the United States of July 25, 1866, 14 Stat. 236, for right-of-way and station purposes, etc., was in accordance with articles 6 and 8 of the Treaty of April 28, 1866, 14 Stat. 771, 772, proclaimed on July 10, 1866, and other Acts of Congress and the Constitution of the United States. On account of the approval of the grant to the railway company by the said Secretary of the Interior on January 19, 1880, such right-of-way and station grounds became vested in the said railway company and has not reverted to the Choctaw and Chickasaw Nations.

Under Section 3, Article 4, of the Constitution of the United States, the Congress of the United States may dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States. Irvine v. Marshall & Barton, 20 How. 558, 61 U.S. 994, 15 L.Ed. 994 and Shively v. Bowlby, 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331, Muskogee Nat. Telephone Co. v. Hall, 8 Cir., 1902, 116 F. 382.

The tract consisting of said 85A and 118A (Exhibit A) about 1730 feet in length and 130 feet in width, divided into lots 1–25, inclusive, formerly part of the said granted and approved right-of-way and station grounds of the Missouri, Kansas & Texas Railway, a Kansas corporation, was about October 25, 1904, by quitclaim by said railway company, a Kansas corporation, granted to a number of parties, defendants hereto, and question is further suggested that said tract subsequently under receivership proceedings was acquired by the said Missouri, Kansas & Texas Railway, as a Missouri corporation, at a receivership sale at a date subsequent to April 26, 1906.

In 1907 the City of McAlester, Oklahoma, after the passage of Section 14 of Act of April 26, 1906, 34 Stat. 142, quitclaimed the land as divided into lots with the exception of a part of said lot in block 85A, to the said several defendants. The improvements upon the said land or lots were valued in appraisement by J. D. Fulton, acting under direction of the Superintendent of the Five Civilized Tribes by direction of Commissioner of Indian Affairs, between August, 1927, and January, 1930, the appraisement of the improvements thereon approximating $75,000 and the value of the lots being separately approved and being appraised by him at $3,910.

The said quitclaimed conveyances by the Missouri, Kansas & Texas Railway Company were executed on October 25, 1904, about 18 months prior to the Act of April 26, 1906, 34 Stat. L. 137.

The Commissioner of Indian Affairs of the United States caused said survey to be made of said blocks 85A and 118A and the several lots thereof as aforesaid as shown by said survey and were appraised and the said valuation made by the said J. D. Fulton, acting under the Commissioner of Indian Affairs, with the valuation placed on such lots with regard to such values as were made in 1904 by the Choctaw Townsite Commission when the original townsite surveys and appraisements were made and completed for the McAlester Townsite (Exhibit B). Under said plan such person or persons entitled to such lots after appraisements were to be notified and given a preferential right to receive deed to the same as was done as to similar lots by and under said Townsite Commission and holders of said lots after appraisement were to be notified and given a preferential right to receive deed to the same as was done as to similar lots by said Townsite Commission, and if such rights were not exercised under said appraisement within 60 days from the date of notice all lots not paid for were to be offered at public auction to the highest and best bidder, in accordance with the rules and practice of the original Choctaw Townsite Commission (see paper from Commissioner of Indian Affairs dated Jan. 11, 1927, approved by Assistant Secretary of the Interior with provision that title be quiet before any sale [Exhibits D and E]).

Under the direction of the Commissioner of Indian Affairs, J. D. Fulton, an appropriate employee under the Superintendent of the Five Civilized Tribes, appraised the lots on said land.

I find that said deeds were without any consideration under conditions as to the quitclaims in favor of the Choctaw and Chickasaw Nations and delivery to J. D. Fulton, the representative of the United States Interior Department in contemplation of settlement of the matter in contro-

versy as set out in said Exhibits D and E, and are void and of no effect, same being as follows:

"Exhibit 'D'

"Refer in reply 5—1100 Address only the to the following Commissioner of Indian Affairs

"United States
"Department of the Interior
"Office of Indian Affairs
"Washington
"Jan. 11, 1927

"To Honorable The Secretary
of the Interior.

"My dear Mr. Secretary:—

"There is transmitted herewith certain data relative to the sale of real estate in the city of McAlester, Oklahoma. The record shows that two tracts of land are involved, about 1730 feet long and 130 feet wide. The land was formerly part of the right-of-way and station grounds of the Missouri, Kansas and Texas Railway, a Kansas Corporation, which corporation, about October 25, 1904, attempted, by quit claim deeds, to convey the land to a number of individuals who had erected improvements thereon. Subsequent to this alleged sale the properties of the Kansas Corporation, under receivership proceedings, were acquired by the Missouri, Kansas and Texas Railway, a Missouri corporation.

"In 1907 the City of McAlester, Oklahoma, divided the land in question into blocks and lots, numbered the blocks 85A and 118A containing lots from 1 to 25, inclusive. The improvements upon the land are valued at approximately $75,000. It appears that the city of McAlester and the state of Oklahoma refuse to assess taxes on the land in question because they assert that it is tribal property.

"The quit claim deeds given by the Kansas corporation indicated above, it will be noticed, were executed about 18 months prior to the Act of April 26, 1906 (34 Stat. L. 137), becoming a law. In connection herewith attention is invited to Section 14 of this Act.

"The views, as set out in the report upon this matter from our office at Muskogee, Oklahoma, transmitted herewith are concurred in.

"It is recommended that authority be granted to cause a survey to be made of Blocks 85-A and 118-A, indicated above and that the several lots shown by such sur-vey be appraised according to a valuation that would have been placed thereon in 1904, and when such survey and appraisement have been completed that such person or persons claiming title to any lot or lots be notified and given a preferential right to purchase the same at the appraised value thereof. If such preferential right be not exercised within 60 days from the date of notice that all lots not paid for shall be offered at public auction to the highest and best bidder therefor.

"Respectfully,
"Chas. H. Burke
"Commissioner.

"Approved: provided title be granted before any sale.
"Jan. 18 1927
"John H. Edwards
"Assistant Secretary."

"Exhibit 'E'
"Department
"Received
Feb 19 1926
"L-C 1001
"5334—26 Supt. Five
"C H I Feb-3 1926 Civilized
"Hon. C. D. Carter,
House of Representatives.

"My dear Mr. Carter:

"Receipt is acknowledged of your letter of January 30, 1926, making inquiry concerning title to certain lands within the town of McAlester, Oklahoma, which you understand have now been abandoned by the M., K. & T. Ry. Co.

"In Section 14 of the Act of Congress approved April 26, 1906 (34 Stat.L. 137), it is in effect provided that upon abandonment of any lands in the Five Civilized Tribes, reserved from allotment or sale under any Act of Congress for railroad or other purposes, title thereto shall vest in the owner of the legal subdivision of which the land so abandoned is a part, except lands within a municipality, the title to which upon abandonment shall vest in such municipality.

"In view of the foregoing it seems that the Government is without jurisdiction to validate the titles claimed by the settlers mentioned in your letter.

"A copy of this letter is enclosed for your convenience.
"Cordially yours,
"(Signed) Chas. H. Burke
"Commissioner."

338

Substantial improvements were placed in good faith by the holders of said lots on the lots covered by the quitclaim instruments, the parties thereunder holding adversely to all others whatever. There is no contention that the improvements were not on the lots when the quitclaims were executed as aforesaid. I find all Exhibits C–1–15 were without any consideration, and are void and ineffective under conditions under which executed and which were delivered to Fulton, the representative of the Interior Department, on account of the proposal of settlement with the view of a compromise or adjustment and that titles did not and were not complied with and did not unconditionally pass, and did not pass. I find that the title did not pass by virtue of said instruments and that same are without effect and void.

Neither the Mayor nor the City Clerk nor any agent of the City of McAlester were ever authorized to execute same nor were they permitted to authorize the execution of any of said instruments. The City Council in no manner authorized execution of same and same were not executed by any agent or any one authorized to so act on the part of the Masonic Lodge, to-wit: A. F. & A. M. Lodge No. 9, a defendant, or said municipality. Same was neither authorized to be executed in any way on the part of said city nor on part of said Lodge. The Masonic Lodge claims to be the owner of lot 6 in block 118A and placed all of the improvements thereon. That part of the right-of-way and station ground was conveyed to the defendants by the Missouri, Kansas & Texas Railway Company, a Kansas corporation, about October 25, 1904, by quitclaim and, in lieu thereof and as consideration therefor, the defendants, with their neighbors, purchased lots on the west side of the right-of-way and station grounds within the town of McAlester that the Railroad Company desired for its use as a railroad for switch yards, etc., and additional station grounds and conveyed same to the Railroad Company and it was in consideration therefor that the Railroad quitclaimed these lots off of the east side of its station grounds contained in blocks 118A and 85A to the defendants. It was with that understanding and for that consideration of the property on the west side that these quitclaims were executed to the defendant by the railroad company in lieu of the property located immediately on the west side thereof and

adjacent thereto and considered as being more suitable for its use for railroad switch yards and station grounds and its railroad purposes and I find that in consideration for said property, to-wit: lots 1 to 25, inclusive, in blocks 85A and 118A, same were conveyed by the railroad company, in lieu of said property on the west side for its use. The date of this transaction between the railroad company was about October 25, 1904.

The improvements on and lots 10 and 11 of block 85A and lots 4, 6, and 7 of said block belonged to the J. J. McAlester Mercantile Company as aforesaid accordingly quitclaimed by the railroad company to said defendant and lot 6 was also acquired from the railroad company in the same manner and under same conditions and consideration. The title of all defendants was deraigned from the railroad company and by and from the common source beginning with the quitclaim from the said railroad company.

On July 26, 1929, lots 4, 6, 7, 10 and 11 of block 85A were deeded by the J. J. McAlester Company, by its vice president, Otto Sites, to the Choctaw and Chickasaw Nation, conditional, under an agreement and promise, the United States would cause patents therefor to issue to defendants for said lots, and it was on that plan under which J. D. Fulton, a representative of the Interior Department through the Superintendent of the Five Civilized Tribes, acted with the understanding that such quitclaims were not to be placed on record or if made a matter of record not to be effective until patents on the part of the United States Government in lieu thereof were issued, but were to be held pending the negotiations when patents under such agreement, which complainant has not kept, were to be issued in favor of defendants. In the conditional plan the property was to be appraised and for the business property 62½% of the appraised value was to be paid to complainant and 50% of the appraised value of the residence property to be paid to complainant, but same has not yet been consummated on the part of the complainant but it has refused to do so. Fulton was an employee in the Union Agency of the Five Civilized Tribes. The appraisement was made and introduced without objection. The patents were never offered to nor tendered for defendants. Defendants were never notified or permitted to pay the respective per

centum of the appraised value. It was only after this trial was first begun and after amendment of pleadings tendered on the part of complainant that these deeds, executed as disclosed at the first part of the hearing, were placed of record and same have no binding force in favor of the Choctaw and Chickasaw Nations, nor as against the defendants. The property on lot 10, residence property, was appraised at $86, and being residence lot the payment would be $43 and the building located on it was of the reasonable value of $7,000 and lot 11 was appraised at $220 and 50% is $110, a stone building of the value of $9,-000 being on the lot, and the defendants offered to pay all these respective sums on the appraisement and made tenders of same. These facts are mentioned as illustrative of the agreement. The tenders made in accordance with the agreement made with Fulton have been refused and including tenders made as to other defendants, and acceptance thereof declined.

The land on which lots described as parts of blocks 85A and 118A, in the City of Mc-Alester, Oklahoma, was ceded originally on October 18, 1820, 7 Stat. 210, arts. 1, 2, 3, by the United States to the Choctaw Nation.[1] On January 17, 1837 the Chickasaw Nation acquired an interest in the lands of the Choctaws,[2] and in 1842 a patent therefor was issued to the Choctaw and Chickasaw Nations. By Treaty of June 22, 1855, proclaimed March 4, 1856, 11 Stat. 611, the two Nations agreed that the United States or any incorporated company shall have right-of-way for railroad or telegraph lines through said Choctaw and Chickasaw lands, but for any property taken or destroyed in the construction thereof full compensation shall be made.

The Union Pacific Railroad Company, southern branch, which later became the M. K. & T. R. Company, a Kansas corporation, obtained the right to construct its lines through Indian Territory through the said Choctaw and Chickasaw Nations under the provisions of the said Act of July 25, 1866, Missouri, K. & T. R. Co. v. United States, 235 U.S. 37, 35 S.Ct. 6, 7, 59 L.Ed. 116, "The right of way was granted in accordance with treaties with the Indians", and the road was completed in 1871 and on January 19, 1880, the Secretary of the

Interior approved said station ground, site, etc., which included the lots in question, as a part of its right-of-way and station ground site. In 1904 the railroad company executed quitclaim deeds conveying certain parts of the said right-of-way in lieu of other and as consideration for right-of-way, switch ground, etc., adjacent and on its west side as located in the City of McAlester, to various parties. In 1907 the City of McAlester, after passage of Section 14, April 26, 1906, quitclaimed from the said right-of-way, etc., land therefrom and as contained in said blocks and lots executed its quitclaim deeds to parties on which the improvements are located as described in Exhibit B, except as to the north 25 feet as blocks 118A & 85A of lot 10 in block 85A, upon which the City of McAlester has caused to be built and maintains a fire station.

The railroad company, as a defendant in this action, filed disclaimer as to the lots in blocks 85A and 118A. As to the question whether section 14 of the Act of April 26, 1906, applies under the facts of this case, it is here concluded that it does.

By treaty, proclaimed July 10, 1866, art. 6, 14 Stat. 769, 771, it is provided that: "The Choctaws and Chickasaws hereby grant a right of way through their lands to any company or companies which shall be duly authorized by Congress * * * and which shall, with the express consent and approbation of the Secretary of the Interior, undertake to construct the railroad through the Choctaw and Chickasaw nations * * *."

By Section 6 of the Act of July 25, 1866, c. 241, 14 Stat. 236, the predecessor, successor, and assignor of the M., K. & T. R. Co. of Kansas, now the M., K. & T. R. Co. of Missouri, was granted a right-of-way, including sites for station grounds for railroad purposes, in which it is provided: "*And be it further enacted,* That the right of way through the public lands be, and the same is hereby, granted to said Kansas and Neosho Valley Railroad Company, its successors and assigns, for the construction of a railroad as proposed; and the right is hereby given to said corporation to take from the public lands adjacent to the line of said road material for the construction thereof. Said way is granted to said rail-

---

[1] Art. 2, Treaty of October 18, 1820, proclaimed January 8, 1821, 7 Stat. 210, 211.

[2] Art. 1, Treaty of January 17, 1837, proclaimed March 24, 1837, 11 Stat. 573.

road to the extent of one hundred feet in width on each side of said road where it may pass through the public domain; also all necessary ground for station buildings, workshops, depots, machine-shops, *switches, side-tracks,* turn-tables, and water stations." (Italics supplied). Section 6.

Section 8 of the said Act of July 25, 1866, provided that the right-of-way granted by section 6 through lands which have not been reserved for the United States but which are reserved for Indian Tribes shall be granted only after the railroad procured the consent of the tribes concerned, which consent was given in this case in said Treaty of July 10, 1866 (as proclaimed), and the railroad was in compliance with said treaty constructed by the said Missouri, Kansas & Texas Railroad Company as before stated. The land or lots deeded by defendants or citizens of McAlester for defendants in lieu of and for the lots embraced in blocks 85A and 118A had been, as admitted on the trial, prior to that time freed from tribal restrictions or claims. And as disclosed by exhibits and inspection and admission in open court, was of equal or greater area and by statements made in open court and not controverted at the hearing was of equal or greater value for railroad yards and switches and station ground on the west side immediately adjacent as a part thereof for railroad right-of-way and station grounds and switch yards, etc., and of equal and greater value than that quit-claimed from the east side of the railroad right-of-way and depot site to the defendants.

The defendants, McAlester Lodge No. 9, A. F. & A. M. and the City of McAlester, and other defendants, hold their titles by direct grant or quitclaim from the M., K. & T. Railway Company, in good faith for value, and have been in adverse possession thereof thirty-nine years, having made good and valuable valued improvements thereon, paying all improvement taxes, such as paving and sewer, such property as the Masonic property and the property of the municipality not being subject to ad valorem taxation.

In Irvine v. Marshall and Barton, 20 How. 558, 61 U.S. 558, 15 L.Ed. 994, the syllabi is as follows:

"All the lands in the Territories, not appropriated by competent authority before they were acquired, are in the first instance the exclusive property of the United States, to be disposed of to such persons, at such times, and in such modes, and by such titles, as the government may deem most advantageous.

"A Territory cannot, by its law, interpose and dictate to the United States, to whom, and in what mode, and by what title, the public lands shall be conveyed, or denounce a forfeiture."

In the opinion, it is said: "The point was well put by Judge Barbour, in delivering the opinion of the court in Wilcox v. Jackson, 13 Pet. [498, 10 L.Ed. 264] 'We hold,' he observed, 'the true principle to be this: that whenever the question in any court, State or Federal, is, whether the title to the land which had been once the property of the United States has passed, that question must be resolved by the laws of the United States; but that, whenever according to those laws the title shall have passed, then that property, like all other property in the State, is subject to State legislation, so far as that legislation is consistent with the admission that the title passed according to the laws of the United States.' "

See 9 Fed.Stat.Ann. 202.

In opinion of the Attorney General of the United States is as follows: "The term ['to dispose of'] was adopted from the ordinance of 1785, and comprehends every mode by which the lands and other property of the United States could be parted with by the government, whether by sale, gift, or for any limited interest." Leases of Mineral Lands on Isle Royale. (1846), 4 Op.Atty.Gen. 480, 487. See also Shively v. Bowlby, 1894, 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331, and Muskogee National Telephone Co. v. Hall, 1902, 8 Cir., 118 F. 382.

In Missouri, Kansas & Texas R. Co. v. Roberts, 152 U.S. 114, 14 S.Ct. 496, 38 L. Ed. 377, it was held that such specific grant of a right-of-way through any such reserved lands, same grant as contained in the proviso to the said act of July 25, 1866, granting lands to aid in the construction of the Union Pacific Railway, southern branch, vested in that company the full title and right of possession, to a right-of-way located through the Osage Indian reservation, the grant being approved by the president.

 In the opinion in the said Roberts case, supra, the land for railway purposes was under the identical grant involved in the instant case, and there expressly recognized as passing title in fee

of the right-of-way and station grounds, etc., to the railroad company. In Missouri, Kansas & Texas R. Co. v. Oklahoma, 271 U.S. 303, 46 S.Ct. 517, 70 L.Ed. 957, the identical grant was involved with reference to the same station grounds and right-of-way, side tracks and switch grounds, in McAlester, Oklahoma, and it was there expressly held that title of right-of-way and depot site, etc., were vested in fee in the railroad.[4]

Said blocks 85A and 118A, a part of said railroad right-of-way and station site, were quitclaimed for immediate adjacent land on the west side to become a part of the railroad right-of-way and station grounds on the said adjacent west side for railroad trackage and switching ground, station site, etc., and which were equal or greater in area and value than blocks 85A and 118A, and the title become vested in fee in the M. K. & T. Railway Company, and has been held by defendants adversely for over thirty years and the Statute of Limitation bars this action. Act of March 3, 1891, c. 1891, c. 561, 26 Stat. 1099, amended on March 2, 1896, Ch. 39, Sec. 1, 29 Stat. at Large, 42, 43 U.S.C.A. §§ 900, 1166. See Notes 1, 15, 16, 18 under said Sec. 1166.

■ Section 14 of Act of April 26, 1906, c. 1876, 34 Stat.L. 137, entitled "An Act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes", provides for the final disposition of all the tribal properties and the complete abolition of the tribal government and the lands of the Choctaw, Chickasaw, Cherokee, Creek and Seminole Nations reserved from allotment and sale under any Act of Congress for the use and benefit of any person or corporation or organization shall be conveyed to the person, corporation or organization entitled thereto: "Provided, That if any tract or parcel thus reserved shall before conveyance thereof be abandoned for the use for which it was reserved by the party in whose interest the reservation was made, such tract or parcel shall revert to the tribe and be disposed of as other surplus lands thereof: Provided further: That this section shall not apply to land reserved from allotment because of the right of any railroad or railway company therein in the nature of an easement for right of way, de-

pot, station grounds, water stations, stock yards or other uses connected with the maintenance and operation of such company's railroad, title to which tracts may be acquired by the railroad or railway company under rules and regulations to be prescribed by the Secretary of the Interior at a valuation to be determined by him; but if any such company shall fail to make payment within the time prescribed by the regulations or shall cease to use such land for the purpose for which it was reserved, title thereto shall thereupon vest in the owner of the legal subdivision of which the land so abandoned is a part, *except lands within a municipality the title to which, upon abandonment, shall vest in such municipality.*" (Italics supplied.)

Under Section 14 the title to abandoned rights-of-way within municipalities vesting in the municipality, the defendants hold title not only from the railroad company by virtue of its quitclaim, thereby vesting title, but also title vesting in defendants from the City of McAlester, under said act of congress.

The defendants in the instant case hold title in two ways[1] direct from the railroad company and[2] the municipality. For the grant to the railroad company was for a consideration under the provisions of the treaty under which the railroad company constructed the line of railway through the Indian Territory, the grant having been made and accepted and acted upon in the construction of the railway line, depots, etc., under the Act of July 25, 1866, and under the grant the fee passed to the railway company, without any provision for right of reversion, and with full power to convey, the grant by the railway company to these defendants vested (1) its title in the defendants and in addition (2) full title was vested in them through the municipality under the Act of April 26, 1906.

■ The railway company owned its right-of-way lands and depot and station grounds in fee. In the construction of land grants in aid of a railroad such granted lands are those falling within the limits specially designated, and the title to which attaches when the lands are located by and approval of an accepted survey of the line of the road filed in the Land Department.

---

[4] 34 Stat. 91, c. 1351; 34 Stat. 137, § 14, c. 1876.

[1] Art. 2, Treaty of October 18, 1820, proclaimed January 8, 1821, 7 Stat. 210, 211.

[2] Art. 1, Treaty of January 17, 1837, proclaimed March 24, 1837, 11 Stat. 573.

In Missouri, K. & T. Ry. v. Oklahoma, 271 U.S. 303, 46 S.Ct. 517, 519, 70 L.Ed. 957, in an opinion by the Supreme Court of the United States, all the judges participating and concurring except Mr. Justice Brandeis (not participating), the other Justices being Taft, Chief Justice, Holmes, Stone, Sanford, McReynolds, Butler, Van Devanter and Sutherland, Associate Justice, it is said: "The company (Missouri, Kansas & Texas Railway Company) owned its right of way land and station grounds in fee. Missouri, Kansas & Texas R. Co. ·. Roberts, 152 U.S. 114, 14 S.Ct. 496, 38 L.Ed. 377."

This referred to the station and depot grounds and right-of-way which were within the boundaries of the City of McAlester. The grant of the right-of-way and station or depot grounds to said railroad by the United States Government was with the consent and approval of the Choctaw and Chickasaw Nations, the sole consideration therefor being the construction of said railroad, and it is there held that the fee thereto of the station and depot grounds and right-of-way vested in the railway company, without any provision for a reversionary right. It may be urged as a matter of good faith that the railway company should have retained all of said grant and operated same. This grant by quitclaim to these defendants did not occasion the diminishing of the railway right-of-way or station grounds. The grant on the part of the defendants and citizens of the additional ground immediately on the west side for yarding, etc., made the right-of-way and station grounds more adequate and at least as valuable and as desirable and as useful for the uses and purposes of the railway company as theretofore.

I had occasion to personally inspect and observe these switch yards and this additional ground on the west side when I was hearing this case and it made the site and yards more useful and as adequate and more valuable for railroad purposes at least as theretofore. Form for judgment will be prepared by attorney and submitted to the court for entry in accordance with these findings and conclusions. (Statement by trial judge).

The complainant did not immediately refuse to accept the tenders made in open court, and the court delayed in finally passing on the case until May 23rd, for complainants' statement, and complainants not having advised the court as to the proffered tenders, though request had been made, and then I specially notified the attorneys for complainants that I would await answer as to accepting or declining the tenders and if they didn't accept same within the 30 days therefrom, to-wit, by June 23, 1944, he would treat such delay and failure to act as a refusal. This was done in order that this case might be expeditiously disposed of and not unreasonably delayed.[5 and 6]

---

[5] "Durant, Oklahoma,
"May 23, 1944.
"United States Attorney
"Federal Building
"Muskogee, Oklahoma.
"Dear Sir:
"I herewith beg to hand you copy of letter received from your office on February 22, 1944 and since that time I haven't heard from you.
"I herewith beg to hand you copy of letter I wrote to the Clerk on March 6th and also copy of letter I wrote your office on March 28th, all in re: United States of America vs. State Bank of Winfield, Kansas, Civil No. 509."
"You will note on March 28th that I stated that I would be very glad to have a report as to whether the tenders made in open court would be accepted. I found from the evidence that the quitclaim deeds made by the several parties to the Choctaw and Chickasaw Nation were occasioned by the communication from Commissioner Burke written on January 11, 1927, in which he states:

[6] "The record shows that two tracts of land involved 1730 ft. long and 130 ft. wide. The land was formerly a part of the right-of-way and station ground of the Missouri, Kansas & Texas Railway, a Kansas Corporation, which corporation about October 25, 1904 attempted by quit-claim deeds to convey the land to a number of individuals who had created improvements thereon. Subsequent to this alleged sale the properties of the Kansas Corporation under receivership proceedings were acquired by the Missouri, Kansas & Texas Railway, a Missouri Corporation. In 1907 the City of McAlester, Oklahoma divided the land in question into lots and blocks, numbered the blocks 85A and 118A and the lots 1 to 25 inclusive. The improvements upon the land are valued at approximately $75,000.00. * * * The quit-claim deeds given then by the Kansas Corporation indicated above it will be noticed were executed about 18 months prior to the Act of April 26, 1906 (34 Stat.L. 137) becoming a law. In connection

That said 30 days have expired and complainant has ignored same and the court finds that the tenders have been refused. Further, this action is barred by the Statute of Limitation not having been instituted within the required time under Act passed by Congress on March 3, 1891, as amended on March 2, 1896.

---

herewith attention is invited to Sec. 14 of this Act. The views as set out in the report upon the matter from our office at Muskogee transmitted herewith are concurred in. It is recommended that authority be granted to cause a survey to be made of Blocks 85A and 118A indicated above and that the several lots shown by survey be appraised according to a valuation that would have been placed thereon in 1904 and when such survey and appraisement have been completed that such person or persons claiming title to any lot or lots be notified and given a preferential right to purchase the same at the appraised value thereof. If such preferential right be not exercised within 60 days from the date of notice that all lots not paid for shall be offered at public auction to the highest and best bidder therefor.'

"These lots were appraised and these quitclaims from these several parties to the Choctaw and Chickasaw Nations were taken under the representation that patents would be duly issued to said parties as same were issued to townsite administration by the payment of 50% of the appraised value for one class of the lots and 62½% of the appraised value of the other class of lots and I find it was under this condition and under this representation that these deeds were executed.

"These parties made these tenders in court in accordance with that. I want to give the United States Attorney's Office an opportunity to advise this court whether these tenders are to be accepted and I am giving you 30 days in which to so advise the court and if I am not advised within that time I will treat the tenders as having been refused on the part of the plaintiff in this action and proceed to hold that these deeds were void and of no force and effect on account of the conditions not being complied with and then endeavor to decide the case on the other issues presented.

"I am sending a copy of this letter to attorneys for the other parties. I am rushing this letter to the United States Attorney's Office because I see that assistant Landram is to go to the Navy and he appeared in these cases on the part of the Government and he dictated most of the correspondence I have had with your office. I would have had this case decided by the middle of April if it hadn't been for holding it up for this information.

"Yours very truly,
"Robert L. Williams.

"p.

"cc: Hulsey & Hulsey,
"H. I. Aston,
"W. G. Stigler."

6 "Department of Justice
"United States Attorney
"Eastern District of Oklahoma
"Muskogee, Oklahoma
"May 27, 1944

"Hon. Robert L. Williams,
"U. S. Circuit Court Judge
"Durant, Oklahoma

"Dear Judge Williams:

"Re: U. S. vs. State Bank of Winfield, Kansas, No. 509 Civil.

"Your letter reached this office just after Mr. Landram had left for the United States Navy where he has been commissioned a Lieutenant (j. g.). I find from the file that he some time ago submitted this matter to the Attorney General for advise, which has not yet been received. I am again calling the attention of the Attorney General to this matter and particularly to the time limit fixed in the letter from you of May 23, 1944.

"We appreciate your advise to us and your attempt to advise this office before Mr. Landram left.

"Very truly yours,
"Francis Stewart
"FS:fh Assistant United States
Attorney."