UNITED STATES *v.* J. S. STEARNS LUMBER COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WISCONSIN.

No. 94.   Argued December 18, 1917.—Decided January 7, 1918.

By the treaty of 1842, proclaimed in 1843, 7 Stat. 591, the Lake Superior Chippewas ceded lands in Wisconsin, reserving privileges of occupancy until removed by the President. Wisconsin was admitted in 1848. The treaty of 1854, proclaimed in 1855, 10 Stat. 1109, set apart from the ceded lands a reservation for the Indians, their occupancy not having been disturbed in the meantime, and provided for surveying this reserved land and for allotting it in severalty, at the discretion of the President. Allotment patents were issued accordingly in 1907, withholding all right of alienation without the President's consent; and under them the allottees resided on and claimed their several tracts. The lands in controversy, comprised by the original occupancy, the reservation and allotments, were surveyed as sections numbered 16, but not until 1864 and 1873. *Held*, that, as the treaty and reservation operated to withdraw the sections before survey and the allotments merely provided a home for the Indians as promised by the treaty, in furtherance of the purpose of

the reservation, the sections were disposed of within the meaning of the school section grant in the Wisconsin enabling act, and title did not pass to the State either before or after the allotments. *Wisconsin* v. *Lane, ante,* 427.
Reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Kearful* for the United States.

*Mr. Arthur Dyrenforth,* with whom *Mr. W. W. Gurley* was on the brief, for appellee.

MR. JUSTICE DAY delivered the opinion of the court.

The United States brought its bill to cancel patents from the State of Wisconsin held by the J. S. Stearns Lumber Company and covering certain lands in the Bad River or LaPointe Indian Reservation in the State of Wisconsin. The District Court dismissed the bill for want of equity. There is no controversy as to the facts, and it appears that the Lake Superior Chippewas by treaty of October 4, 1842, proclaimed March 23, 1843, 7 Stat. 591, ceded large tracts of land in Wisconsin and Michigan to the United States, reserving the right of hunting on the ceded territory, and other usual privileges of occupancy until removed by the President. Within the Wisconsin territory were included the sections 16 in question, lying in township 46 north, ranges 2 and 3 west, and township 47 north, in range 2 west.

Wisconsin was admitted to the Union in 1848. The enabling act contained the provision as to the school sections recited in *Wisconsin* v. *Lane,* just decided, *ante,* 427. The President did not remove the Indians, and on September 30, 1854, a treaty was made with them, proclaimed January 29, 1855, 10 Stat. 1109, whereby the

United States set apart the LaPointe Reservation in Wisconsin, and provided for surveys and allotments in severalty from time to time of such reserved lands in the discretion of the President.

This reservation embraces the land in controversy, nothing was said in the treaty about sections numbered sixteen. The sectional survey, identifying sections 16, as to one of the townships was made in 1864, as to the other two in 1873. From 1881 to 1887 the State of Wisconsin claiming to own these lands under its school land grant, patented them to various persons, under whom the Lumber Company claims title.

In 1907 allotment patents were issued by the President of the United States to the Indians in severalty under article 3 of the treaty of 1854, the allottees have since resided on the reservation, and claim the lands allotted and patented to them. The patents in each case contained a provision that the allottee and his heirs shall not sell, lease or in any manner alienate the lands except with the consent of the President. From 1909 to 1912 timber on the lands in dispute, which had been damaged by fire, was cut for sale by the Lumber Company under stipulation made with approval of the United States, and the value of the lumber so realized was deposited in banks for the benefit of the parties entitled thereto, the amount so deposited being $66,833.56.

This case does not need extended discussion as in our opinion it is controlled by the decision of this court just rendered in *Wisconsin* v. *Lane, ante,* 427. The treaty of 1854 authorized the ultimate allotment in severalty to the Indians of the lands reserved by it. Afterwards such allotment of the sections in question was made by the President of the United States in carrying out the purposes of the treaty. Considering the obligations of the United States in favor of its Indian wards imposed by this treaty, and the purpose for which these lands were

reserved, we are of opinion that the treaty with these provisions in favor of the Indians amounts to a disposition of the lands within the authority of Congress, and is not inconsistent with the enabling act under which the school lands were provided for the State.

Considering that the lands were reserved by the treaty long before they were surveyed and the sections identified, the fact that they were after survey allotted in severalty to the Indians does not in our view enable the State to claim the sixteenth sections under the school lands grant. What was ultimately done in the process of allotment was merely to provide a home for these Indians in furtherance of the purpose with which the reservation was made. (See *Missouri, Kansas & Texas Ry.* v. *United States,* 235 U. S. 37, 40.)

We are of opinion that the disposition of the lands by treaty in favor of the Indians, before the survey identifying the school sections, was but an exercise of the right of the United States to make other disposition of the lands, and the State of Wisconsin must seek indemnity elsewhere, as provided by law. It follows that the judgment of the United States District Court for the Western District of Wisconsin must be reversed, and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed.*

Mr. Justice McReynolds took no part in the consideration or disposition of this case.