### KANSAS *v.* UNITED STATES.

No. 11, Original. Submitted November 12, 1906.—Decided February 25, 1907.

Where the name of a State is used simply for the prosecution of a private claim the original jurisdiction of this court cannot be maintained.

Although a State may be sued by the United States without its consent, public policy forbids that the United States may without its consent be sued by a State.

THE facts are stated in the opinion.

*Mr. Chiles C. Coleman*, Attorney General of the State of Kansas, *Mr. Joseph H. Choate, Mr. James Hagerman, Mr. Adrian H. Joline, Mr. A. B. Browne, Mr. John Madden* and *Mr. Joseph M. Bryson* for complainant:

It is a sufficient answer to the motion of defendants to dismiss that the State of Kansas claims by its bill to be the owner of the legal title and to have the right to maintain the suit against all the defendants, including the United States, for the reasons set forth in the bill. This claim cannot be met by a motion to dismiss, but must be met by either plea, answer or demurrer, for in that way only can the State have an opportunity of a full hearing and consideration upon the merits, according to the principles of the rules of equity, which re-

quire that the plea, demurrer or answer be set down for hearing and argument. *Sparrow* v. *Strong*, 3 Wall. 105; *Semple* v. *Hagar*, 4 Wall. 433; *Blythe* v. *Hinckley*, 180 U. S. 337; *Morning Star* v. *Cunningham*, 110 Indiana, 328; *Ruddock* v. *Gordon*, Quincy (Mass.), 38.

The legal title to the lands granted is by the terms of the granting acts vested in the State of Kansas for the use and benefit of the Missouri, Kansas and Texas Railway Company by relation from the date of the grant, and this legal title of the State of Kansas to the granted lands in the Indian Territory has never been divested and is now vested in the State of Kansas.

The grants were *in præsenti* to the State of Kansas for the use and benefit of the railway company, effective from the dates of the grants, and attached, when the road was constructed, to the particular lands in controversy, and by the doctrine of relation the legal title of the State dates from the grants.

The United States and each one of the separate States may sustain the character of trustee, and have the legal capacities to take and execute trusts for every purpose. Perry on Trusts, § 41; *McDonald* v. *Murdock*, 15 How. 400; *United States* v. *Michigan*, 190 U. S. 379; *Van Wyck* v. *Knevals*, 106 U. S. 360 *et seq.*

In the case at bar it is the duty of the State of Kansas, as trustee for the railway company, to defend, uphold and protect the title which was granted to it and to see that the lands go to the beneficiary of the trust. The legal title did not pass to the railroad company upon the construction of the road. *Van Wyck* v. *Knevals*, 106 U. S. 360.

No patent has issued to the railway company, and hence the legal title conveyed by the granting act to the State still remains in the State. The State of Kansas is hence the indispensable party complainant and can pray the demanded relief.

*Van Wyck* v. *Knevals, supra,* is direct authority that the

title to the granted lands is vested in the State of Kansas, for the land grant there construed is in practically the same words as §§ 1, 3 of the land grant of 1866 to the State of Kansas for the use of the railway company.

There is no Federal statute of uses, nor is there any Federal common law. The lands in question are not situated in Kansas or any other State. Under the decisions of the courts, both English and American, the statute of uses was never held to execute the trust or pass the legal title to the *cestui que trust* where the trust created was such that it was necessary that the trustee should continue to hold the legal title in order to carry out and effectuate the purposes of the trust. The statute of uses has never been considered to execute the trust where the trust was created for the express purpose of preserving a contingent remainder. Perry on Trusts, §§ 305, 309; *Biscoe* v. *Perkins*, 1 Ves. & B. 485; *Barker* v. *Greenwood*, 4 M. & W. 431; *Vanderheyden* v. *Crandall*, 2 Denio, 9; *Laurens* v. *Jenney*, 1 Spears, 365; Co. Litt., 265 a. 2, 337 a. n. 2.

The provisions of § 3, even though they apply to the lands in the Indian Territory, in no way affect the grant to the State. *Van Wyck* v. *Knevals*, 106 U. S. 360, 364; *St. Paul & Pac. R. R.* v. *Northern Pac. R. R.*, 139 U. S. 1; *Langdeau* v. *Hanes*, 21 Wall. 521; *Wright* v. *Roseberry*, 121 U. S. 488.

This suit can be maintained in this court under the original jurisdiction clause of the Constitution. *United States* v. *Texas*, 143 U. S. 621; *United States* v. *Michigan*, 190 U. S. 379. The only difference is that the State is plaintiff and the United States defendant.

The Constitution of the United States is the Constitution of all the States speaking in a united sense, and this court, as the Supreme Court of the United States, is also, in the same sense, the Supreme Court for all the United States, having original jurisdiction in all cases of Federal cognizance "in which a State shall be a party." The language of the Constitution in this respect is broad and unqualified. Hence, the door does not here open to the United States against the

State and close against the State when the United States is
sought to be made defendant. _Minnesota_ v. _Hitchcock_, 185.
U. S. 373.

If the element of express consent by the United States to
be thus sued is essential, such consent has been given to in-
dividuals to thus sue the United States in all cases at law,
in equity, or admiralty, not sounding in tort, by the act of
March 3, 1887 (24 Stats., p. 505).

Under these statutes and the Constitution of the United
States, the Government has not only impliedly but expressly
given its consent to be sued in a case where a State is a party,
in the Supreme Court of the United States. Suits may be
instituted in the territorial district court against the Gov-
ernment under these statutes, although such territorial courts
are not named in the act, under § 1910, Rev. Stat., which pro-
vides that each of the district courts in the Territory shall
have and exercise the same jurisdiction in all cases arising
under the Constitution and laws of the United States as is
vested in the circuit and district courts of the United States.
_United States_ v. _Forman_, 5 Oklahoma, 237; _Johnson_ v. _United
States_, 6 Utah, 403.

_The Attorney General, The Solicitor General_ and _Mr. Assis-
tant Attorney General Russell_ for defendants:

The suit is not one of which this court has original jurisdic-
tion. A State is not a party within the meaning of the Con-
stitution, Article III, section 2.

The State of Kansas has no substantial interest in the sub-
ject matter, and is but nominally the complainant, the real
party in interest being the railway company.

Legal title passed to the railway company, if to anyone,
at the date of the grant, or at least upon the construction of
the road. _Rice_ v. _Railroad Company_, 1 Black, 358, 381.

A conveyance to trustees for certain purposes or uses car-
ries the legal estate to the beneficiaries, unless duties im-
posed upon the trustees require the estate to be vested in

them. *Webster* v. *Cooper,* 14 How. 488, 499; *Long* v. *Long,* 62 Maryland, 65; Perry on Trusts, §§ 351, 352, 520, 521. This is the rule in Kansas. General Statutes of Kansas (1905), sec. 8624; *Bayer* v. *Cockerill,* 3 Kansas, 282, 292.

When an estate is given to trustees for a certain purpose, or until the happening of a certain event, the intermediate estate of the trustees terminates upon the accomplishment of the purpose or occurrence of the event. *Felgner* v. *Hooper,* 80 Maryland, 262; Perry on Trusts, section 351.

If "the purpose of aiding the railroad company to construct and operate a railroad;" or the State's share therein, has been accomplished, then the trust has terminated and legal title is in the company; if it has not, then there is no cause for complaint.

But in this case the State was not even a trustee. It was no more than perhaps a repository in which the title might remain pending the performance of the condition of the grant, or a conduit through which the title might thereupon pass.

The granting act provides that patents shall issue, not to the State, but to the railroad company. Under such circumstances title vests in the company and not in the State. *Sioux City &c., Railroad* v. *United States,* 159 U. S. 349, 363, and cases cited; *Knepper* v. *Sands,* 194 U. S. 476, 481.

Patent not essential to transfer of legal title. It is simply evidence that conditions of grant have been complied with. *Deseret Salt Company* v *Tarpey,* 142 U. S. 241. Title passes by the grant upon performance of its conditions, and being evidenced by patent, it passes to grantee to whom patent is to issue. By a proper construction of the granting act (sections 1 and 9), lands in Indian Territory were not granted to the State of Kansas. If granted at all, the grant as to them was to the railroad company direct.

In formal communications and protests by the railroad company to the Dawes Commission, the town-site commission, the Indian Agent, and the Secretary of the Interior, the tracts in question have been claimed by the company invariably

heretofore as its own, without reference to any interest of the
State therein. Of the counsel for the State two at least be-
long to the legal department of the railway company. Ap-
parently the proceeding is under the control of the railway
company and the name of the State is used simply for the pur-
pose of prosecuting the claim of the company to the lands in
question, the expense of the action being borne by the rail-
road. Under these circumstances the interest of the State
is not sufficient to give this court original jurisdiction. *New
Hampshire* v. *Louisiana*, 108 U. S. 76.

This is not a suit by a State exclusively against citizens of
another State. Some of the parties defendant are citizens
of the Indian Territory. A suit by a citizen of a Territory
cannot be maintained under the Constitutional provision that
jurisdiction of courts of United States shall extend "to con-
troversies between citizens of different States." *Corpora-
tion of New Orleans* v. *Winter*, 1 Wheat. 92; *Downes* v. *Bid-
well*, 182 U. S. 244, 250.

Jurisdictional qualities must exist as to all parties in order
to confer jurisdiction. *Great Southern Hotel Company* v.
*Jones*, 177 U. S. 449.

The United States, the real party in interest as defendant,
has not consented to be sued, and cannot be sued without its
consent, even by a State.

The contention that, since a State without its consent may
be sued by the United States, *United States* v. *Texas*, 143 U. S.
621, it follows that the United States without its consent
may be sued by a State, is obviously unsound. The ques-
tion has been squarely decided. *Minnesota* v. *Hitchcock*,
185 U. S. 373, 384; *Oregon* v. *Hitchcock*, 202 U. S. 60; *United
States* v. *Lee*, 106 U. S. 196, 207.

It does not appear that all lands in controversy have been
allotted, and the courts will not interfere with the Govern-
ment in the disposal of land so long as the title in any sense
remains in the United States. *Bockfinger* v. *Foster*, 190 U. S.
116; *Oregon* v. *Hitchcock, supra.*

It might be suggested, in passing, that in any event the grant was expressly limited to *public land*—that is, land which is subject to disposition under general laws, *Newhall* v. *Sanger*, 92 U. S. 761, and these lands in Indian Territory have never become such.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

On April 30, 1906, the State of Kansas applied for leave to file a bill of complaint against the United States and others, to which the United States objected on the ground of want of jurisdiction. May 21 leave was granted, without prejudice, and the bill was accordingly filed. As such an application by a State is usually granted as of course, we thought it wiser to allow the bill to be filed, but reserving to the United States the right to object to the jurisdiction thereafter, and hence the words, "without prejudice," were inserted in the order. October 9 leave was granted to the United States to file a demurrer, and in lieu of this a motion to dismiss was substituted, which was submitted November 12 on printed briefs on both sides.

The bill was filed by the Attorney General of Kansas, on behalf of the State, as trustee for the Missouri, Kansas and Texas Railway Company, of certain lands in the Indian Territory, alleged to have been granted to the State for the benefit of the railway company.

It is stated by counsel for complainant, as appearing from the bill, that in 1866 "there were three Kansas railroad companies running through the State to the Indian Territory line. The first was the Union Pacific Railway Company, Southern Branch, since the Missouri, Kansas and Texas Railway Company, extending from Fort Riley, now Junction City, Kansas, in a southeasterly direction, down the valley of the Neosho River, to the southern line of the State of Kansas, near Chetopa, Kansas; the second was the Leavenworth, Lawrence and

Fort Gibson Railway Company, since conveyed to the Atchison, Topeka and Santa Fé Railroad Company, extending from Leavenworth, through Lawrence, to the northern line of the Indian Territory, near Coffeyville, Montgomery County, Kansas, in the direction of Galveston Bay, in Texas; and the third was the Kansas and Neosho Valley Railway Company, since the Kansas City, Fort Scott and Memphis, and now · a part of the St. Louis and San Francisco Railroad Company, extending from a point of connection with the Union Pacific Railroad at or near the mouth of the Kansas River; thence southeasterly, through the eastern tier of counties, to the northern line of the Indian Territory, at or near Baxter Springs, in Cherokee County, Kansas."

On July 25, 1866, an act of Congress was passed entitled "An Act granting lands to the State of Kansas to aid in the construction of the Kansas and Neosho Valley Railroad and its extension to Red River." 14 Stat. 236, c. 241. On the next day, July 26, an act was passed, using the same language, except as to the routes, entitled "An Act granting lands to the State of Kansas to aid in the construction of a Southern Branch of the Union Pacific Railway and Telegraph Company, from Fort Riley, Kansas, to Fort Smith, Arkansas," 14 Stat. 289, c. 270, which provided as follows:

"That for the purpose of aiding the Union Pacific Railroad Company, Southern Branch, the same being a corporation organized under the laws of the State of Kansas to construct and operate a railroad from Fort Riley, Kansas, or near said military reservation, thence down the valley of the Neosho River to the southern line of the State of Kansas, with a view to an extension of the same through a portion of the Indian Territory to Fort Smith, Arkansas, there is hereby granted to the State of Kansas, for the use and benefit of said railroad company every alternate section of land or parts thereof designated by odd numbers, to the extent of five alternate sections per mile on each side of said road and not exceeding in all ten sections per mile; . . ."

"SEC. 3. . . . . And the lands hereby granted shall inure to the benefit of said company, as follows: When the governor of the State of Kansas shall certify that any section of ten consecutive miles of said road is completed in a good, substantial, and workmanlike manner as a first-class railroad, then the said Secretary of the Interior shall issue to the said company patents for so many sections of the land herein granted within the limits above named, and coterminous with said completed section hereinbefore granted; . . ."

"SEC. 8. *And be it further enacted,* That said Pacific Railroad Company, southern branch, its successors and assigns, is hereby authorized and empowered to extend and construct its railroad from the southern boundary of Kansas, south through the Indian Territory, with the consent of the Indians, and not otherwise, along the valley of Grand and Arkansas rivers, to Fort Smith, in the State of Arkansas; and the right of way through said Indian Territory is hereby granted to said company, its successors and assigns, to the extent of one hundred feet on each side of said road or roads, and all necessary grounds for stations, buildings, work-shops, machine-shops, switches, side-tracks, turn-tables, and water-stations.

"SEC. 9. *And be it further enacted,* That the same grant[s] of lands through said Indian Territory are hereby made as provided in the first section of this act, whenever the Indian title shall be extinguished by treaty or otherwise, not to exceed the ratio per mile granted in the first section of this act: *Provided,* That said lands become a part of the public lands of the United States."

The bill averred that the road was constructed through the Indian Territory, and set forth at length Indian treaties and Congressional legislation with reference to that Territory, under which it was alleged that the Creek Indian Nation had ceased to occupy or claim the lands in question as a tribe or nation, and that some of the lands had been allotted in severalty to individual members of the Creek Nation; and that thereby

said lands passed to the State under the provisions of the grant mentioned. It was prayed that a decree be entered adjudging the State to be the owner, as trustee for the railway company, of all odd-numbered sections of land to the extent of the grant along the line of the road through the Creek Nation, in the Indian Territory, and that the allottees be directed to surrender the possession to the State as trustee and be enjoined from disposing of said lands, or "in the event that from any equitable considerations the court shall entertain the view that the allottees and those claiming under them should not be disturbed, then that an account be taken of the value of the lands in controversy," and that the United States be adjudged to pay to the State as trustee the sum of such values, estimated at more than $10,000,000.

In our opinion it appears upon the face of the bill that the State of Kansas is only nominally a party, and that the real party in interest is the railroad company. Section 3 provided that patents should be issued not to the State but to the company direct, which made the State nothing but a mere conduit for the passage of title. And this is so even if it were ruled that the State of Kansas was made trustee under section 9, because it would only be trustee of the bare legal title. In very many cases "in which the grant was directly to the railroad company, or in which the act of Congress required that the patents for lands earned should be issued, not to the State for the benefit of the railroad company, but directly to the company itself," it has been held that the title vested absolutely in the railroad company. *Sioux City &c. Railroad Co.* v. *United States,* 159 U. S. 349, 363.

Title passed by the grant on the performance of its conditions and to the grantees to whom the patents were to be issued, and here section 3 provided that patents should issue not to the State but to the railroad company direct.

And if the lands in the Indian Territory could be held in any view to have been granted *in præsenti,* such grant was certainly not to the State of Kansas.

The road, in aid of which the grant was made to the State, extended no farther than the southern boundary thereof, and the patents were to be issued to the company. True, as declared in section 1, the road was to be constructed "with a view to an extension of the same through a portion of the Indian Territory to Fort Smith, Arkansas," and that extension was authorized by section 8, but the lands referred to in section 9 were not lands in the State of Kansas, nor was that State mentioned in the section. It seems clear that those lands were not intended to be granted to that State for the construction of a road beyond its boundaries.

Moreover, the bill sets forth many communications and protests by the railroad company to the Dawes Commission, the townsite commission, the Indian agent and the Secretary of the Interior, in all of which the tracts in controversy were claimed by the railroad company as its own without reference to any interest of the State of Kansas therein.

In these circumstances we think it apparent that the name of the State is being used simply for the prosecution in this court of the claim of the railroad company, and our original jurisdiction can not be maintained.

Again, the United States is the real party in interest as defendant and has not consented to be sued, which it can not be without its consent. *Minnesota* v. *Hitchcock*, 185 U. S. 373, 387; *Oregon* v. *Hitchcock*, 202 U. S. 60; *United States* v. *Lee*, 106 U. S. 196, 207.

"If whether a suit is one against a State is to be determined, not by the fact of the party named as defendant on the record, but by the result of the judgment or decree which may be entered, the same rule must apply to the United States. The question whether the United States is a party to a controversy is not determined by the merely nominal party on the record but by the question of the effect of the judgment or decree which can be entered."

In the present case the parties defendant other than the United States and its officers are Creek Indian allottees and

persons claiming under them, and if their allotments should be taken from them, which is part of the relief sought by the bill, the United States would be subject to a demand from them for the value thereof or for other lands, while the bill prays in the alternative that "in the event that from any equitable considerations the court should entertain the view that the allottees and those claiming under them should not be disturbed, then that an account be taken of the value of the lands in controversy at the time of the respective allotments, and the defendants, the United States of America, be ordered, adjudged, and decreed to pay to your oratrix, as trustee, the sum of such values."

It does not follow that because a State may be sued by the United States without its consent, therefore the United States may be sued by a State without its consent. Public policy forbids that conclusion.

In *United States* v. *Texas*, 143 U. S. 621, 646, it was held that the exercise by this court of original jurisdiction "in a suit brought by one State against another to determine the boundary line between them, or in a suit brought by the United States against a State to determine the boundary between a Territory of the United States and that State, so far from infringing, in either case, upon the sovereignty, is with the consent of the State sued. Such consent was given by Texas when admitted into the Union upon an equal footing in all respects with the other States." That case was quoted from with approval in *Minnesota* v. *Hitchcock, supra,* where Mr. Justice Brewer, delivering the opinion, pointed out that the judicial power of the United States extends to cases in which the United States is a party plaintiff as well as to cases in which it is a party defendant, for "while the United States as a government may not be sued without its consent, yet with its consent it may be sued, and the judicial power of the United States extends to such a controversy."

We are not dealing here with the merits of the controversy raised by the bill, but solely with the question of the original

jurisdiction of this court. And as the United States has not consented to be sued, it results that on this ground also the bill must be dismissed.

*And it is so ordered.*

MR. JUSTICE MOODY took no part in the disposition of this case.