# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3147

_____

Thermal Science, Inc.,     *
                               *

        Appellant,     *

                              * Appeal from the United States
                              * District Court for the
    v.                         * Eastern District of Missouri.
                              *

U.S. Nuclear Regulatory     * (PUBLISHED)
Commission,                       *
                              *
                              *

        Appellee.      *

_____

Submitted: March 9, 1999

Filed:     July 26, 1999

_____

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges and
     SACHS,[1] District Judge.

_____

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western
District of Missouri, sitting by designation.

PER CURIAM.

On October 1, 1996, the United States Nuclear Regulatory Commission ("NRC") issued a Notice of Violation and proposed that a $900,000 civil penalty be imposed on Thermal Science, Inc. ("TSI") for alleged violations of the NRC's "Deliberate Misconduct," or "Wrongdoer," Rule, 10 C.F.R. § 50.5. In response, TSI brought suit seeking preliminary and permanent injunctive relief against further proceedings by the agency.

TSI is a Missouri corporation engaged in manufacturing and selling a family of products known as "Thermo-Lag." Thermo-Lag is a fire-retardant material which provides fire protection for, among other things, electrical cables in nuclear power plants.

The NRC is charged with regulating the nuclear power industry and protecting the public's health and safety in accordance with the Atomic Energy Act. 42 U.S.C. § 2201 et seq. In 1980 it issued regulations governing fire protection in nuclear power plants, and, most relevant here, a regulation requiring all plants to protect at least one train of equipment necessary to shut down the plant safely in the event of a fire. See 10 C.F.R. § 50.48. To win NRC approval of Thermo-Lag for this use, TSI submitted Thermo-Lag test results to the NRC during the 1980s, stating that the tests had been conducted independently of TSI's control. The NRC places a high premium on product testing that is independent of the product's manufacturer.

In June 1989, the NRC learned that the Thermo-Lag product may have failed a fire-endurance test conducted by an NRC licensee. The NRC launched civil and criminal investigations focused on determining whether TSI had, in a number of

communications with NRC licensees and the NRC, overstated the extent of independent testing laboratory involvement. After an exchange of correspondence and an NRC inspection of TSI facilities, NRC staff concluded that some of the communications from TSI contained false or misleading information.

The NRC also contracted with two independent laboratories, whose tests indicated significant failures of Thermo-Lag. The NRC paid approximately $800,000 for these tests and reassigned numerous individuals from their normal duties to investigate the testing and installation of Thermo-Lag.

In April 1992, the NRC issued a final report informing NRC licensees that the fire resistive value of Thermo-Lag was simply "indeterminate." Because the "relative safety significance of the [Thermo-Lag] fire barrier concerns [is] . . . low," licensees were advised they could keep Thermo-Lag installed. The NRC has continued to approve Thermo-Lag's installation.

Acting on the NRC's 1992 referral, the Department of Justice brought the misrepresentation matter before a federal grand jury. In 1994, the grand jury returned a seven count indictment against TSI and its president, Rubin Feldman, for making false statements to the NRC concerning the independence of Thermo-Lag testing. After more than two months of trial, the jury acquitted TSI and Mr. Feldman in August 1995.

TSI now claims that the NRC administrative proceeding infringes its constitutional double jeopardy protection and also exceeds statutory limits on the NRC's

authority. The district court[2] concluded that TSI's action was premature and granted the NRC's motion to dismiss. Thermal Science, Inc. v. United States Nuclear Regulatory Comm'n, 29 F.Supp. 2d 1068 (E.D. Mo. 1998). We affirm, relying largely on the well-supported opinion of the district court. We would not be justified in concluding, as would be necessary for reversal, that the district court's dismissal at this early stage of the administrative proceedings was an abuse of discretion.[3]

This case does, however, present some troubling procedural issues on which comment may be useful. We comment largely because there are some considerations present here that strongly support what may be viewed as a form of interlocutory appeal from the institution of the administrative proceeding.[4] To begin, the underlying circumstances giving rise to the administrative proceeding are fixed in time more than a decade ago, and the controversy deserves prompt resolution. Moreover, the administrative proceeding follows the agency's referral of the case for criminal

---

[2]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

[3]Where, as here, there is not a statutorily-imposed administrative exhaustion requirement, we review a district court's decision to dismiss because of prematurity for an abuse of discretion. State of Missouri v. Bowen, 813 F.2d 864, 871 (8th Cir. 1987).

[4]We note that interlocutory appeals from the district courts under Fed. R. Civ. P. 54(b) and 28 U.S.C. § 1292(b) are entertained by balancing the factors pro and con, without distinct guidelines. Hayden v. McDonald, 719 F.2d 266, 268-69 (8th Cir. 1983). Questions like double-jeopardy defenses against prosecution are sometimes given interlocutory review and sometimes not. United States v. Field, 62 F.3d 246, 247 (8th Cir. 1995) (interlocutory appeal from district court order denying double jeopardy defense will only be entertained if claim is colorable). Some of the case law on exhaustion and prematurity is difficult to reconcile, except by supposing that those decisions were also based on a somewhat unstructured balancing of pertinent factors.

prosecution.  While the result on the merits is presumably not foreordained, there is understandable concern by TSI that institutional loyalties will have some influence in resolving the merits.

For these reasons, we have given closer attention to the legal points raised by TSI than we might have had these factors not been present.  In these unusual circumstances, an administrative proceeding suffering fatal legal defects would serve no one's interests and might invite prompt and final resolution – even by an unconventional or at least non-routine appeal to the judicial system.[5]

In other words, if TSI's double jeopardy and lack of regulatory authority arguments had been compelling (or if they could have been summarily rejected) it would have been tempting for the panel to supply answers.  But even if we could rule (1) that TSI has no strong double jeopardy argument and (2) that NRC's statutory authority to "govern" all human safety and property protection features of nuclear

---

[5]Rule 54(b) interlocutory appeals are of course generally disfavored.  Interstate Power Co. v. Kansas City Power & Light Co., 992 F.2d 804, 807 (8th Cir. 1993) ("it is only the 'special case' that warrants an immediate appeal."); Page v. Preisser, 585 F.2d 336, 339 (8th Cir. 1978) (noting the "exceptional nature of a Rule 54(b) certification" and admonishing that such certifications "should not be entered routinely or as a courtesy or accommodation to counsel.").  The same may be said of early appeals to the judicial system.  See, e.g., Sierra Club v. United States Nuclear Regulatory Comm'n, 825 F.2d 1356, 1362 (9th Cir. 1987) ("Judicial intervention in uncompleted administrative proceedings absent a statutory mandate is strongly disfavored.") (quoting Bakersfield School Dist. v. Boyer, 610 F.2d 621, 626 (9th Cir. 1979)); West v. Bergland, 611 F.2d 710, 715 (8th Cir. 1979)) ("Normally, a litigant is not entitled to a judicial hearing on the merits of his claim until he has exhausted available administrative remedies.").

energy facilities, <u>see</u> 28 U.S.C. § 2201(i), carries with it the right to directly regulate product suppliers as well as licensees through the Wrongdoer Rule, we nevertheless would conclude there is one significant legal question that has not been adequately developed by the parties -- particularly the NRC -- that would require a remand to the agency.

TSI contends that, apart from the propriety of the NRC's issuance of the Wrongdoer Rule, in its application to suppliers who are not licensees, there is no statutory authority to impose penalties on such entities for violations. The penalty authorization statute, 28 U.S.C. § 2282, refers to specific statutory provisions unrelated to the "governing" authority contained in 28 U.S.C. § 2201(i). Whatever remedies for a violation of the Wrongdoer Rule may exist against a nonlicensee supplier, TSI contends that the NRC cannot use the § 2282 procedural vehicle, as it seeks to do in the administrative proceeding.

Neither in briefing, oral argument nor in the public notices regarding the Wrongdoer Rule, <u>see</u> 55 FR 12374 (proposed rule); 56 FR 40664 (final rule), does the NRC adequately discuss its authority to pursue nonlicensee violations of the Wrongdoer Rule under § 2282. At oral argument, in fact, the NRC contended that no administrative answer has been formulated on this potential objection and that this is an additional basis for ruling that judicial review is premature. <u>See</u> Tr. at 23 ("The Commission has not determined whether or not it has authority to issue the civil

penalties to nonlicensees.").  The Court also considers that TSI's briefing here and in the district court lacks a sufficient fleshing out of the various aspects of that question.[6]

Somewhat reluctantly, for the reasons stated, we agree with the NRC that the § 2282 penalty authority issue is prematurely presented.  In light of the necessity of an agency answer to that question, and the absence of a compelling TSI argument on its other contentions, it is best to defer the entire matter for later judicial resolution, if necessary.  We agree with the district court that the questions should be carefully and promptly examined at the agency level.  Prudence would seemingly dictate determining the legal soundness of a penalty proceeding in these circumstances before preparing to relitigate the criminal case with a reduced burden of proof.

For the reasons indicated, we affirm the dismissal of the complaint.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]For example, if an alleged Wrongdoer Rule violation by a non-licensee is not subject to a "civil penalty" proceeding under § 2282, is there any other statutory or regulatory authority currently available for remedial administrative proceedings?